Judgment rendered July 15, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,943-CA
No. 56,944-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

No. 56,943-CA

BONNIE BENNETT
  Plaintiff-Appellee

versus

PATHWAY MANAGEMENT
OF LOUISIANA, L.L.C. AND
HERITAGE MANOR WEST,
L.L.C. D/B/A "HERITAGE
MANOR WEST"
  Defendants-Appellants

No. 56,944-CA

BONNIE BENNETT
  Plaintiff-Appellee

versus

HERITAGE MANOR WEST,
L.L.C. D/B/A HERITAGE
MANOR WEST
  Defendants-Appellants

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court Nos. 626,044 and 637,280

Honorable Brady D. O'Callaghan, Judge

* * * * *

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
By: Nicholas J. Wehlen

Counsel for Defendants-
Appellants, Pathway
Management of
Louisiana, LLC;
Heritage Manor West,
LLC; and Heritage
Manor West

LUNN IRION LAW FIRM, LLC
By: Ronald E. Raney

BRADLEY, MURCHISON, KELLY
and SHEA, LLC
By: Patrick W. Woolbert

McNEW, KING, LANDRY                    Counsel for
& HAMMETT, LLP                         Intervenor-Appellant,
By: Brady D. King, II                  Louisiana Patient's
                                       Compensation Fund
                                       Oversight Board

GARCIA & ARTIGLIERE                    Counsel for Plaintiff-
By: Stephen M. Garcia                  Appellee, Bonnie
   Jordan M. Jeansonne                 Bennett
   Matthew M. Coman

FLANAGAN PARTNERS LLP
By: Thomas M. Flanagan
   Anders F. Holmgren
   Alixe L. Duplechain


* * * * *


Before PITMAN, THOMPSON, and ELLENDER, JJ.

**PITMAN, C. J.**

Defendants-Appellants Pathway Management of Louisiana, LLC ("Pathway LLC") and Heritage Manor West, LLC ("Heritage") appeal the judgment of the trial court rendered pursuant to a judgment notwithstanding the verdict ("JNOV") in favor of Plaintiff-Appellee Bonnie Bennett for negligence and fraud in the care of her father at a nursing home. The Louisiana Patient's Compensation Fund ("PCF") intervened in the appeal. For the following reasons, the judgment is reversed in part, affirmed in part and modified.

### FACTS

At first blush, this appears to be a typical medical malpractice case brought under the Louisiana Medical Malpractice Act ("LMMA"), La. R.S. 40:1231.1, et seq.; but for various reasons, it is not. Bennett sued Pathway LLC and Heritage for negligence and fraud in the care of her father, Raymond Davidson, who was a resident at Heritage Manor for four years. He entered the facility in 2015 and lived there until March 3, 2020, when he was transferred to another facility for care of pressure wounds and decubitus ulcers on his buttocks, groin and sacral areas. He died May 20, 2020.

Heritage provided proof that it was a qualified health care provider ("QHCP"), and a medical review panel was invoked on May 13, 2020.

Bennett filed suit September 18, 2020, in the First Judicial District Court in Docket No. 626,044 against Pathway LLC, as the administrative manager of Heritage. The petition contains a footnote which states as follows:

On May 13, 2020, Raymond Davidson, as "Claimant," requested the formation of a Medical Review Panel in accordance with La. R.S. 40:1231.8 as to Heritage Manor West, LLC d/b/a "Heritage Manor West," the "Health Care Provider" FACILITY (La. R.S. 40:1231.1(A)(l0)). The defendants specifically named herein and the claims alleged herein are not encompassed by La. R.S. 40:1231.1, et seq. On May 20, 2020, Claimant died. On July 20, 2020, Bonnie Bennett, as the daughter and surviving child of Raymond Davidson, requested that the Medical Review Panel substitute her as Claimant against Heritage Manor West, LLC d/b/a "Heritage Manor West."

Bennett's petition alleged that Pathway LLC, as administrative manager of Heritage, was responsible for the facility's failure to properly care for Davidson. It also alleged that in late January 2020, Heritage failed to provide necessary custodial care for Davidson that included failure to provide necessary nutrition and hydration resulting in his hospitalization on multiple occasions. In March 2020, Davidson was transferred from Heritage to another facility where he was again diagnosed with malnutrition, dehydration and dangerously low hemoglobin that required a blood transfusion. After he was transferred, Davidson died; his death certificate lists "sacral wounds with sepsis" as his immediate cause of death.

Bennett alleged that these injuries were caused solely by the negligence and/or fault of Pathway LLC and/or through Heritage, as alleged under La. C.C. art. 2315, et seq. She further alleged that their actions constituted administrative negligence, and it was through their fault that Davidson suffered a lost chance of survival, wrongful death and severe and painful injuries to his mind and body, as well as unnecessary medical expenses. She stated that administrators at Heritage failed to maintain adequate staffing, which resulted in failure to provide the care necessary to support Davidson's medical needs.

After the medical review panel was completed, Bennett filed suit against Heritage in Docket No. 637,280, and then amended her suit against Pathway LLC in Docket No. 626,044 in June 2021, adding Heritage as a defendant. By consent of the parties, the suits were consolidated. In the amended petition, Bennett alleged that after her father's death, she was substituted as the claimant before the medical review panel. In a footnote to the petition, she states:

> As retained in the proposed First Amending Petition for Wrongful Death and Survivor's Damages and Injunctive Relief, the claims alleged therein against the Facility and existing Defendants constitute separate torts apart from a claim under the Medical Malpractice Act. (Citation omitted.)

> She inserted a claim related to violations of the Nursing Home Residents Bill of Rights ("NHRBR") provided under La. R.S. 40:2010.6, et seq. including the award of reasonable attorney's fees and costs of the action.

In a second amended petition, Bennett alleged medical negligence and stated that those allegations apply only to Heritage, which breached its standard of care and treatment during Davidson's residency at the facility. As to Pathway LLC, she alleged it had the administrative authority and duty to provide appropriate care and services to him and that it failed miserably. The petition stated that the claim for administrative negligence or failure to provide adequate staffing was a claim of general negligence not subject to the LMMA.

The second amended petition further included a third section entitled "Intentional Fraud," which was applicable only to Heritage. It cited the NHRBR, which provides that all nursing homes shall adopt and make a public statement of the rights and responsibilities of the residents residing therein and shall treat such residents in accordance with the provisions of the

3

statement. Bennett alleged Heritage committed fraud when it misrepresented or suppressed the truth as to its ability to adequately care for her father and did so with the intention either to obtain an unjust advantage for itself or to cause a loss or inconvenience to him.

A jury trial was held August 20-23, 2024. On the last day of the trial, outside the presence of the jury, Defendants raised the issue of the qualification of Pathway LLC as a QHCP so that it would be entitled to the protections of the LMMA. Pathway LLC's attorney stated that it did not have the certificate of enrollment issued to it by the PCF, and the attorney admitted that the certificate was not produced in discovery. Pathway LLC noted that it had included its certificate of enrollment as an exhibit in a joint pretrial statement and that Bennett had not objected. Pathway LLC's attorney argued that jurisprudence allowed testimony and other documentary evidence to support a finding that the certificate is merely prima facie evidence of enrollment.

The trial court agreed to hear Pathway LLC's evidence but declined to decide whether it was a QHCP until after the jury's verdict was rendered. The testimony of Bobby L. Beebe, Jr., president of Pathway Management, Inc.[1] ("Pathway Inc.") was taken and he stated that Pathway Inc. managed nursing homes in the states of Louisiana and Mississippi through its subsidiaries, including Pathway LLC. Beebe testified that Pathway LLC has professional liability insurance and is a member of the PCF. He stated that the LLC had made an application, paid the fee and filed the financial responsibility form. He asserted that the LLC had been enrolled with the

---

[1] Pathway Management, Inc. is not the defendant in this case. Pathway LLC is the defendant.

4

PCF during the period of September 2019 until September 2020. Beebe identified documents reflecting the payments made proving enrollment in the PCF, and these were proffered. Pathway LLC's certificate was included with the proffer exhibits.

The jury found in favor of Bennett on the survival, wrongful death and fraud claims. The judgment memorializing the jury's verdict was signed on October 28, 2024, and stated that the total award of damages from Pathway LLC and Heritage was $3,897,689.63. They were assessed with damages of $2,897,689.63 for Davidson's survival action and wrongful death with legal interest against Heritage from the date the medical review panel complaint was filed. Pathway LLC was assessed with these damages with legal interest from the date of judicial demand. Heritage was assessed with $1 million for the fraud committed upon Davidson, which allegedly convinced him to become a resident of its facility. An award of attorney fees was left to a later date.

Bennett filed a motion for the award of attorney fees and costs. Defendants filed a JNOV on grounds of validity of the damages awarded by the jury, whether a previous decision regarding Pathway LLC's status as a QHCP was correct and whether the fraud claim was duplicative when it was based on the same factual circumstances as the claim for negligence. Defendants also filed a motion for reconsideration and/or for a new trial regarding a ruling by the trial court in October 2024, which concerned whether the damage cap set forth in the LMMA applied to the claims brought against Pathway LLC.

In a judgment rendered on April 30, 2025, the trial court ruled on these post-trial motions and the JNOV and amended the original judgment in

several significant respects. The trial court ordered Heritage to pay attorney fees of $265,636.25 for the fraud claim. Heritage and Pathway LLC were ordered to pay $51,673.46 ($25,836.73 each) in costs. The trial court found the fraud damages to be "largely co-extensive with the medical malpractice damages, and not subject to the LMMA's statutory cap." Thus, it reduced the jury's award of $1 million for the fraud claim "only to the extent that the other damages are subsumed by that award" and amended the judgment for fraud to $687,500.

The trial court found that although the administrative negligence claim sounded in malpractice and not in general negligence, Pathway LLC failed to prove its status as a QHCP and could not benefit from the LMMA. In its reasons for this finding, the trial court noted that Pathway LLC had failed to file an exception of prematurity invoking its right to the medical review panel consideration prior to the filing of the suit. The trial court concluded that it had waived its right to invoke the review and also waived the right to limit its damages as provided by the LMMA.

The trial court further addressed the jury's award of damages and found that, regardless of the cause of action or theory of recovery, an appropriate award for both the survival and wrongful death claims was $625,000 apportioned equally between Defendants ($312,500 each).

The trial court affirmed the special damage award of $297,189.63 in medical expenses and $500 for funeral expenses, to be paid in equal portions by Defendants ($148,844.82 each).

The trial court also cast Heritage in judgment for $1,440,317.80 and Pathway LLC in judgment for $487,181.55. The PCF was not cast in judgment.

6

The PCF intervened on May 28, 2025, and filed a petition for a suspensive appeal, which was granted. The PCF's appeal only raises issues pertinent to its liability to cover the damages assessed to each Defendant and requests clarification of its responsibility in the litigation.

Pathway, Heritage and the PCF appeal the judgment of the trial court.

## DISCUSSION

### *Fraud and Attorney Fees*

The awards for fraud and attorney fees were rendered against Heritage alone. Heritage argues that the jury's judgment was manifestly erroneous and should have been vacated by the district court when it granted the JNOV in part and reduced the damages for the fraud award by the amount of damages awarded for the medical malpractice action. It argues that there was no reasonable basis for finding that it committed fraud or that it either consciously desired the physical result of its purported fraud or knew that the result was substantially certain to follow from its conduct. Heritage contends that Bennett failed to meet any burden of proof that the alleged inadequate care resulted from understaffing or that the staffing levels were low before Davidson was admitted or that it knew it could not meet his medical needs but still convinced him to reside there. Thus, Bennett failed to show sufficient knowledge or intent to defraud Davidson or Bennett.

Heritage also argues that if it is liable for fraud, Bennett is precluded from recovering damages under multiple legal theories because such recovery for fraud would be duplicative recovery. It contends that Bennett was awarded damages for survival and wrongful death claims sounding in negligence but then received an additional $687,500 in fraud damages

7

despite failing to show any additional harm that the fraud caused. For this reason, Heritage argues that the fraud damages award should be vacated.

Bennett's argument for fraud against Heritage is twofold, i.e., that Heritage failed to provide adequate staffing to meet Davidson's needs and that those actions and failure to act constituted administrative negligence, i.e., ordinary negligence, and that it made representations to him at the time of his admission with knowledge that those representations were false and which they had no intention of fulfilling. She asserts that the damages are intended to compensate for Davidson's lost opportunity to reside in a different nursing home, not for his injury or death, and that the LMMA does not apply to this fraud claim.

The standard for reviewing a JNOV is the manifest error standard. *Caskey v. Merrick Const. Co.*, 46,886 (La. App. 2 Cir. 3/14/12), 86 So. 3d 186, *writ denied*, 12-0847 (La. 6/1/12), 90 So. 3d 442. A motion for JNOV presents the legal question of whether there is sufficient evidence to support a jury verdict. *Id*. In reviewing the JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. *Id*. The appellate court uses the same criteria as the trial court to determine if the trial court properly granted a JNOV, i.e., do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. *Id*. After determining that the trial judge correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. *Id*.

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a

8

loss or inconvenience to the other.  La. C.C. art. 1953.  Fraud may also result from silence or inaction.  *Id*.  Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence.  La. C.C. art. 1957.  The party against whom rescission is granted because of fraud is liable for damages and attorney fees.  La. C.C. art. 1958.

Whether a claim sounds in medical malpractice is a question of law reviewed under a de novo standard.  *Patterson v. Claiborne Operator Grp., L.L.C.,* 55,264 (La. App. 2 Cir. 11/15/23), 374 So. 3d 299.

Malpractice is defined at La. R.S. 40:1231.1(A)(13) as follows:

"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including but not limited to failure to render services timely and the handling of a patient, loading and unloading of a patient, and all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the staffing, training, or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient. This includes all acts associated with the medical treatment of an individual, whether directly related to clinical care or performed in an administrative or managerial capacity necessary for the delivery of such care.

Tort is defined at La. R.S. 40:1231.1(A)(22) as follows:

 "Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.

In *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So. 2d 303, the supreme court identified six factors to be utilized in determining whether an action sounds in medical malpractice: (1) whether the specific wrong is

9

treatment related or caused by a failure of professional skill; (2) whether the specific wrong will require expert medical evidence to determine if the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition;  (4) whether an incident occurred in the context of a physician-patient relationship or was within the scope of activities that a hospital is licensed to perform; (5) whether the injury would have occurred if the patient did not seek treatment; (6) whether the alleged tort was intentional.

In *Broden v. Priority Mgmt. Grp., L.L.C.,* 25-01651 (La. 2/12/26), 427 So. 3d 726, the plaintiffs sued a nursing home manager, which was a QHCP,  alleging claims for administrative negligence including understaffing and poor staffing of a nursing home which resulted in inadequate care being provided to a resident in the months prior to his death. Because the defendant was a QHCP, the pertinent issue addressed was whether the claims constituted medical malpractice within the meaning of the LMMA or were more properly characterized as general negligence. The court also discussed whether understaffing and underfunding were "intentional" acts which fell outside of the LMMA and concluded that the mere allegation does not establish an intentional tort sufficient to circumvent the requirements and protections of the LMMA.  *Broden v. Priority Mgmt. Grp., L.L.C., supra,* stated in footnote 7:

> Intent for these purposes requires that the person committing the action "consciously desires the physical result of his act" or that the injuries were "substantially certain to follow from his conduct, whatever his desire may be." *Bazley v. Tortorich,* 397 So. 2d 475, 481 (La. 1981). In this context, that would require proving [management company] consciously desired the injuries or death of [resident] or that the same was substantially certain to follow its conduct, which they did not do in this case.

10

Simply using the word "intentional" does not convert a medical malpractice claim into an intentional tort.

In *Douglas v. Pathway Mgt. of La, LLC,* 56-040 (La. App. 2 Cir. 4/9/25), 408 So. 3d 1186, this court stated:

> The administrative claims of understaffing set forth in plaintiff's petition tend to show the degree of care which was, or should have been, provided to plaintiff, and the appropriate standard of care are questions which require expert medical knowledge ... Likewise, the opinion of experts will be required to determine if [the management company] breached the standard of care by, *inter alia*, failing to ensure [the nursing home] had sufficient resources to maintain adequate staffing to meet plaintiff's needs in accordance with her plan of care.

*See also Patterson v. Claiborne Operator Group, LLC*, *supra*, examining understaffing and inadequate staffing claims, and finding that "they are all related to an alleged failure to provide care, which is the very essence of the LMMA."

Bennett's claim for fraud based on false statements made to Davidson upon admission, which allegedly prevented him from having an opportunity to reside elsewhere, is not a viable ground for recovery. Fraud cannot be predicated on unfulfilled promises or statements as to future events. *Johnson v. Unopened Succession of Alfred Covington, Jr.*, 42,488 (La. App. 2 Cir. 10/31/07), 969 So. 2d 733.

The manifest error standard applies to the review of medical malpractice cases. Under the manifest error standard of review, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. *Temple v. Ballard*, 56,407 (La. App. 2 Cir. 11/19/25), 425 So. 3d 206, *writ denied*, 26-00144 (La. 4/9/26), 429 So. 3d 726. In order to reverse a fact finder's determination, an appellate court must review the record in its entirety and (1) find that a

11

reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Id.* The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. *Id.* The issue to be decided by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. *Id.*

Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* When the jury's findings of fact are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989); *Temple*, *supra*.

Bennett failed to produce any proof that Heritage intentionally committed fraud upon Davidson by implying it would abide by its duty to provide care and in failing to do so. The burden of proof, which required a showing of intent to deceive and that Heritage knew that the result was substantially certain to follow from its conduct, was never met in this case. Simply using the word "intentional" does not convert a medical malpractice claim into an intentional tort; and, therefore, these are not allegations upon which a judgment of fraud can be based.

After reviewing the JNOV, we find the trial court committed manifest error in its decision to affirm the jury's fraud judgment albeit modified by reduction by the amount of damages awarded in medical malpractice. The record does not contain sufficient evidence to support a jury verdict of fraud

12

separate from the claim of medical malpractice. For the foregoing reasons, we find the assignment of error to have merit.

We note that the attorney fees were awarded against Heritage for the judgment of fraud pursuant to La. C.C. art. 1958. The trial court addressed the issue in the JNOV and determined that Heritage would pay $265,636.25 in attorney fees to Bennett for the prosecution of the fraud claim. Although Heritage did not raise any argument specifically addressing this award of attorney fees, once it was determined that there was no basis for fraud, there was no statutory basis for attorney fees and none should have been awarded. La. C.C.P. art. 2164 provides that the appellate court shall render any judgment which is just, legal and proper upon the record on appeal. Because we find it was manifest error to award any amount for fraud, we reverse the trial court's judgment on the JNOV and vacate the damage award against Heritage of $687,500 and the award of attorney fees of $265,636.25.[2]

*Pathway LLC's Status*
*as a Qualified Health Care Provider*

Pathway LLC argues that the trial court abused its discretion in refusing to accept the proffer of its proof of enrollment in the PCF during trial and then committed manifest error when it made the factual determination that it was not entitled to the benefit of enrollment limiting the damages against it to $100,000 under the LMMA and finding that the PCF would be responsible for the remainder of its judgment up to the cap of $500,000. It asserts that the applicability of the LMMA is a legal issue and

---

[2] We note that Bennett has argued that a successful party who was awarded attorney fees in the trial court and then successfully defends an appeal is entitled to an award of additional fees and costs for the additional work required in that defense. She sought remand to quantify the amount due for additional work done, including preparing an answer and drafting an appellate brief. However, because she was unsuccessful in defense of the fraud judgment and the award of attorney fees, this issue is pretermitted.

13

that this court should conduct a de novo review of the record, including the proffered certificate, and find that it proved it was enrolled and entitled to the protections provided by certification.

Bennett argues the trial court's judgment denying Pathway QHCP status was not an abuse of discretion or manifestly erroneous. Pathway LLC never produced its certificate of enrollment in the PCF in response to a discovery request and failed to produce "thousands of pages of medical records." She contends that Pathway LLC also never provided a copy of the proper certificate during trial. The trial court found that she was justified in believing Pathway LLC was not a QHCP and that to allow use of the proffered proof at trial "would have rewarded Defendants' seemingly casual compliance with their discovery obligations and would have transformed what was either a deliberate misdirection or an unintentional mistake into a tactical advantage at trial."

La. R.S. 40:1231.2 concerns qualification as a QHCP and states as follows:

A. To be qualified under the provisions of this Part, a health care provider shall:

(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.

(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1231.4.

(3) For self-insured health care providers, initial qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Initial qualification shall be effective for all other health care providers at the time the malpractice insurer accepts payment of the surcharge.

These same requirements are reiterated in LAC 37:III.501, et seq., which governs the qualifications, conditions and procedures required for

14

PCF enrollment. *Roberson v. Arcadia Healthcare Ctr., Inc.*, 37,761 (La. App. 2 Cir. 7/9/03), 850 So. 2d 1059. In *Roberson,* this court noted that of particular relevance is LAC 37:III.515, which concerns the certificate of enrollment and provides as follows:

> A. Upon receipt and approval of a completed application (including evidence of financial responsibility pursuant to § 505, § 507, or § 509) and payment of the applicable surcharge by or on behalf of the applicant health care provider, the executive director shall issue and deliver to the health care provider a certificate of enrollment with the fund, identifying the qualified health care provider and specifying the effective date and term of such enrollment and the scope of the fund's coverage for that health care provider.

LAC 37:III.515(B) states that duplicate or additional certificates of enrollment shall be available to and upon the request of an enrolled health care provider or his attorney, or its professional liability insurance underwriter, when the certification is required to evidence enrollment or qualification with the fund in connection with an actual or proposed medical malpractice claim against the health care provider.

These provisions demonstrate that a health care provider becomes enrolled in the PCF, and is thus qualified, upon approval of an application, demonstration of financial responsibility to the satisfaction of the PCF and payment of the applicable surcharge to the PCF. *Roberson*, *supra*. Upon satisfaction of these three basic requirements, a certificate of enrollment is issued, and this certificate establishes the health care provider to be a qualified health care provider under the LMMA. *Id.* This is the only reference to the "certificate of enrollment" in the LMMA. *Roark v. Liberty Healthcare Sys., LLC*, 44,913 (La. App. 2 Cir. 12/9/09), 26 So. 3d 968, *writ denied*, 10-0390 (La. 4/23/10), 34 So.3d 265. On this statutory authority for the allowance for the "certificate of enrollment" as evidence, the

15

jurisprudence holds such certificate is competent evidence to establish a *prima facie* case for the applicability of the medical malpractice law regarding claims against the party identified on the certificate. *Id*., *citing, Hill v. Brentwood Hosp., Inc*., 480 So. 2d 875 (La. App. 2 Cir. 1985).

In order to qualify for the protections and benefits of the LMMA, a health care provider must satisfy both the financial aspects and the licensing requirements. *In re Price*, 56,500 (La. App. 2 Cir. 12/17/25), 425 So. 3d 957, *writ denied*, 26-00053 (La. 3/31/26), 428 So. 3d 687.

The purpose of the LMMA is to limit the liability of health care providers who qualify by maintaining specified malpractice insurance and by paying a surcharge to the PCF. *Sewell v. Drs. Hosp.*, 600 So. 2d 577, (La. 1992). The LMMA limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims. *Id*. As such, the coverage of the LMMA should be strictly construed. *Id*. These limitations apply only in cases of liability for malpractice as defined in the LMMA. *Id*. A qualified health care provider is liable for malpractice only to the extent provided in the LMMA; namely, a qualified health care provider has no liability for any amount in excess of $100,000, plus interest. *Roark*, *supra*. All claims against health care providers covered by the Act are required to be reviewed by a medical review panel. *Sewell*, *supra*.

Although Pathway LLC insists it is enrolled in the PCF and is entitled to the benefits conferred upon it by virtue of its enrollment, it never presented Bennett with the certificate evidencing enrollment at any time prior to trial and only proffered the correct certificate to the trial court prior to judgment on the merits of the case. Pathway apparently waived its first right under the LMMA to invoke a medical review panel when it failed to

16

file an exception of prematurity to Bennett's lawsuit. Had the medical review panel been invoked, the certificate of enrollment would have been admitted at that time. La. R.S. 40:1231.8(B)(1)(a)(i) and (ii). By agreement of all parties, the use of the medical review panel may be waived. La. R.S. 40:1231.8(B)(1)(c). If the burden of proof is on the QHCP, Pathway should have been able to produce its certificate at some time prior to trial or should have objected to the prematurity of Bennett's suit it claims is covered by the LMMA.

Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Temple*, *supra*. We do not find the trial court's conclusion that Pathway, LLC failed to meet its burden of proof of QHCP status prior to trial to be manifestly erroneous. This assignment of error is without merit, and Pathway, LLC is responsible for payment of the judgment rendered against it as a non-qualified health care provider.

*JNOV Damages, Interest and Costs*

Bennett and Defendants have all raised issues with the final judgment rendered by the trial court pursuant to the JNOV. Pathway and Heritage assert that the trial court correctly reduced the jury's unreasonable damage award by making a de novo award based on its independent assessment of damages. They contend that the jury's award of general damages of $1.5 million on Bennett's survival claim and $1.1 million on the wrongful death claim far exceeded awards in similar cases, thus necessitating a reduction by the district court. Defendants also claim the trial court erred in failing to include the PCF's liability in the final judgment and erred by

17

incorrectly calculating the date from which interest would run on attorney fees and the amount of costs awarded.

Bennett contends that the jury's award of damages for the survival and wrongful death actions was not abusively high when jurisprudence of similar cases was considered. Thus, she argues, the trial court erred in reducing her award pursuant to the JNOV. She argues that the PCF need not be cast in judgment to be liable for payment to her. She acknowledges that the date of interest on attorney fees is incorrectly stated in the final judgment and also acknowledges that the cost award is higher than she requested and agrees with the amount Defendants assert is due.

### Damages

A jury has great discretion in awarding general damages. *Pete v. Boland Marine & Mfg. Co., LLC,* 23-00170 (La. 10/20/23), 379 So. 3d 636, *citing* La. C.C. art. 2324.1. The discretion afforded to the trier of fact in awarding general damages is not, however, unfettered. *Id.*

It is well-settled that appellate courts have a constitutional duty to review the law and facts and thereafter render a judgment on quantum based on the merits, including determining whether the jury has abused its much discretion in awarding general damages. *Barber Bros. Contracting Co., LLC v. Capitol City Produce Co., LLC*, 23-00788 (La. 12/19/24), 397 So. 3d 404, *reh'g denied*, 23-00788 (La. 2/14/25), 400 So. 3d 918. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. *Barber Bros. Contracting Co. LLC*, *supra*.

18

General damage awards must not be obviously the result of passion or prejudice, and they should bear a reasonable relationship to the elements of the proved damages. *Id*. To reduce the trier of fact's award, a reviewing court must conclude from the entirety of the evidence viewed in the light most favorable to the plaintiff that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge or that this is one of those exceptional cases where such awards are so gross as to be contrary to right reason. *Id*. To find abuse of discretion warranting the disturbance of a fact finder's award of general damages, a reviewing court must find that the award is so high or so low in proportion to the injury that it shocks the conscience. *Id*.

In *Barber Bros.*, the court stated that it considered prior awards in similar cases along with the particular facts and circumstances of the case at bar when it determined whether there had been an abuse of discretion in an award of general damages. *Id*.

In the case at bar, the trial court applied the legal analysis approved in *Barber Bros.* and determined that the almost $2.6 million in general damages far exceeded the award in other cases with similar facts. As noted by the trial court, the case of *King v. Brown Dev., Inc.*, 43,827 (La. App. 2 Cir. 2/4/09), 4 So. 3d 231, *writ denied*, 09-0499 (La. 4/17/09), 6 So. 3d 796, is very similar to the instant case. In that case, the plaintiff's father was an 84-year-old patient in a nursing home who suffered a small pressure sore on his hip. His condition worsened and it became a Stage IV decubitus ulcer. The nursing home failed to provide documentation that he had been repositioned in accordance with his care plan. After becoming malnourished and dehydrated, he died a month after admission. The jury in that case

originally awarded $750,000 for the survival action and wrongful death. The trial court reduced the award to $500,000, the statutory cap of the LMMA. The judgment was reduced a second time to $200,000, and it was appealed to this court. This court determined that although $500,000 was on the "upper end" of reasonable damages for both actions, "we cannot say that the record provides no support for the award." *Id*.

After examining the facts of the case at bar and the jurisprudence of other awards, the trial court reduced the award from the very large award of millions to 25 percent above the award of *King*, *supra*, finding reasonable damages for the survival and wrongful death claims to be $625,000, or $312,500 each, for Heritage and Pathway LLC in accordance with the jury's decision that the damages should be split equally between them.

We find no abuse of discretion in the ruling of the trial court reducing the damages awarded to Bennett for the wrongful death and survival actions.

<u>The PCF's Absence from the Final Judgment</u>

Defendants contend that the trial court erred in not including the PCF in its final judgment and in calculating interest and costs. It notes that the judgment of October 28, 2024, memorializing the jury verdict correctly applied La. R.S. 40:1231.2 by capping malpractice damages against Heritage at $100,000 and casting the PCF in judgment for the excess malpractice award against Heritage up to $500,000 plus Heritage's share of medical costs and related benefits. In that judgment, the PCF was ordered to pay $548,594.81, consistent with the LMMA. However, Defendants contend that the final judgment rendered pursuant to the JNOV erroneously failed to include the PCF, resulting in an assessment of uncapped medical malpractice damages against Heritage. They argue the judgment should be reversed,

20

Heritage's damages capped and the PCF cast in judgment for the remainder of the damages.

Bennett claims the PCF need not be cast in judgment to be responsible for a portion of malpractice damages owed by a QHCP; and, thus, there is no need to amend the judgment to add the PCF. The law provides for the damages due from the PCF when status as a QHCP has been established. The PCF does not have to be made a party to the litigation or cast in judgment in order to disburse its funds.

The PCF intervened in this appeal to assert its statutory rights, privileges and immunities and to resist any efforts to enlarge its responsibility or obligations under the JNOV.[3]

La. R.S. 40:1231.2(B)(3)(a) provides that any amount due from a judgment or settlement which is in excess of the total liability of all liable health care providers, as provided in Paragraph (2) of this Subsection, shall be paid from the PCF. La. R.S. 40:1231.4(B) states in pertinent part:

> (1) Subject to the other provisions of this Section, the board shall issue payment in the amount of each claim submitted to and approved by it, or prorated payment, as the case may be, against the fund within thirty days of receipt of a certified copy of the settlement, judgment, or arbitration award except that payment for claims made pursuant to Subparagraph (2)(d) or (e) of this Subsection, or both, shall be made upon receipt of such certified copy.
>
> (2) The only claim against the fund shall be a voucher or other appropriate request by the board after it receives:
>
>> (a) A certified copy of a final judgment in excess of one hundred thousand dollars against a health care provider.

---

[3] The PCF did not address the issue raised by Defendants that it had not been cast in judgment but only asserted its liability for that portion of the judgment for which it was liable in accordance with the LMMA. The PCF states it is not responsible for the cost award because it was for costs incurred prior to judgment or its intervention. La. R.S. 40:1231.2(B)(2). It is not liable for any amounts which Pathway LLC was cast in judgment because it is not a QHCP, citing La. R.S. 40:1231.1(D). It is liable for excess damages arising from or caused by health care provided by Heritage subject to credits and the cap on damages. La. R.S. 40:1231.2.

21

The LMMA neither contemplates the PCF as a party defendant, nor gives the PCF status as a co-obligor or insurer of the health care provider. *Khammash v. Clark*, 13-1564 (La. 5/7/14), 145 So. 3d 246. The PCF is a statutory intervenor who has an interest in the proceedings between the claimant and the health care provider because any damages in excess of $100,00 are payable by the PCF. *Id.*[4]

Because the PCF need not be cast in the final judgment being appealed, we find no error in the trial court's decision not to cast it in judgment. The law provides a remedy for recovery of damages against the PCF when the final judgment against a QHCP exceeds $100,000, as it does in the case at bar. The PCF has acknowledged that it is responsible for payment of damages against Heritage, which exceed $100,000, and that Heritage is responsible for the first $100,000, and the PCF is responsible for any excess amounts or $361,344.81. However, the PCF is not liable for costs awarded prior to judgment. La. R.S. 40:1231.2(B)(2).

<u>Interest and Costs</u>

Defendants assert that the final judgment on the JNOV erroneously held that interest on all awards, including the attorney fee award, ran from the date of judicial demand, and that is an error. They contend that this is a legal error; and assuming attorney fees are awarded, Bennett is only entitled to interest on such award from the date of the final judgment.

Bennett agrees with Defendants that the trial court's calculation of interest on attorney fees should accrue from the date of judgment rather than

---

[4] *Khammash*, *supra*, was rendered in May 2014 and was based on La. R.S. 40:1299.44(C)(5)(a), which was amended effective June 2, 2015, and redesignated as La. R.S. 40:1231.4.

22

the date of judicial demand. However, Bennett contends that the trial court's award of interest on the other damages from the date of judicial demand should remain intact.

Because the award of attorney fees was based on the fraud judgment, both of which were vacated earlier in this opinion, the issue of the date from which interest was awarded on the attorney fees is moot.

Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto," which may be rendered by any of the courts. La. R.S. 13:4203. Interest on damages awarded against Heritage other than for fraud was correctly stated in the JNOV as running from the date of the filing of the medical malpractice complaint on May 13, 2020. Because no medical malpractice complaint was filed against Pathway LLC, and it is not a QHCP, interest on the judgment against it began to run on the date of judicial demand, September 18, 2020. La. C.C.P. art. 1921; La. R.S. 13:4203.

Costs

Defendants' final issue with the JNOV regards the award of costs of $51,673.46, which they contend was manifest error and should be reduced to $46,285.03, the amount Bennett actually requested be awarded.

Bennett agrees that she deleted some deposition costs from the total of costs requested and ultimately asked the trial court to award $46,285.03. She agrees that the costs should be amended to reflect the lower amount.

Because of the agreement of the parties that the proper award of costs is $46,285.03, the judgment will be amended to reflect this amount.

23

**CONCLUSION**

Based on the foregoing, the judgment is reversed and vacated insofar as it awarded any damages and attorney fees for fraud, amended to reflect the correct amount of costs, and otherwise affirmed. Defendant Heritage Manor West, LLC, as a qualified health care provider, is cast in judgment for medical malpractice damages in the amount of $312,500; special damages in the amount of $148,844.82; and costs in the amount of $23,142.51 (half of $46,285.03), plus interest from the date of the filing of the medical malpractice action on May 13, 2020. Heritage Manor West, LLC, is entitled to the benefits of enrollment in the Patient's Compensation Fund limiting its liability to $100,000. Pathway Management of Louisiana, LLC, a non-qualified health care provider, is cast in judgment for $312,500 for general damages; $148,844.82 for special damages; and $23,142.51, plus legal interest from date of judicial demand, September 18, 2020.

Costs of this appeal are assessed against the three parties equally.

**REVERSED IN PART AND VACATED, AFFIRMED IN PART, AND MODIFIED AS TO COSTS.**